UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| XEROX CORPORATION, a New York corporation, | : : : |
| Plaintiff, | : : |
| - against - | : Civ. Action No. 08 CV 6480 : |
| ARIZONA DIGITAL PRODUCTS INC., an Arizona corporation, | : : |
| Defendant. | : : : |

## MEMORANDUM OF LAW OF XEROX CORPORATION IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER

NIXON PEABODY LLP
Carolyn G. Nussbaum
1100 Clinton Square
Rochester, New York 14604
Telephone: (585) 263-1000
Fax: (585) 263-1558
cnussbaum@nixonpeabody.com

Of Counsel:

NIXON PEABODY LLP
Christopher M. Mason
437 Madison Avenue
New York, New York 10022
Telephone: (212) 940-3000
Fax: (212) 940-3111
cmason@nixonpeabody.com

*Attorneys for Plaintiff Xerox Corporation*

# TABLEOF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND..................................................................................................... 2

ARGUMENT .............................................................................................................................. 6

    POINT I - PERSONAL JURISDICTION EXISTS OVER ADP............................................. 6

        A.   Specific Jurisdiction Exists Over ADP Pursuant to CPLR 302(a)(1)............................ 7

        B.   Specific Jurisdiction Exists Over ADP Pursuant to CPLR 302(a)(3).......................... 11

        C.   The Exercise of Personal Jurisdiction Over ADP Comports with Due Process ........... 14

    POINT II - VENUE IS PROPER IN THE WESTERN DISTRICT OF NEW YORK ............ 15

    POINT III - ADP CANNOT MAKE A CLEAR SHOWING THAT VENUE SHOULD
             BE TRANSFERRED TO THE DISTRICT OF ARIZONA................................. 16

    POINT IV - THE COURT HAS SUBJECT MATTER JURISDICTION OVER XEROX'S
             CLAIMS ........................................................................................................ 20

    POINT V - ADP IS NOT ENTITLED TO ATTORNEY'S FEES.......................................... 23

CONCLUSION......................................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Agency Rent A Car System v. Grand Rent A Car Corp.*, 98 F.3d 25 .................................................8

*Arma v. Buyseasons*, 2008 U.S. Dist. LEXIS 99724 ....................................................19

*Bausch & Lomb Inc. v. CIBA Vision Corp.*, 2008 U.S. Dist. LEXIS 56183 .................................17

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25 ..........................................................13

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 ....................................................23

*Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549 ...........................................12, 13

*Corning Data Services v. Kermick*, 2007 U.S. Dist. LEXIS 52088 ..............................................16

*Creative Socio-Medics Corp. v. City of Richmond*, 219 F.Supp.2d 300.....................................10

*DiStefano v. Carozzi N. America, Inc.*, 286 F.3d 81 .....................................................6

*Druck Corp. v. Macro Fund*, 102 Fed. Appx. 192, 194......................................................6

*Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158 ................................................7

*Gulf Insurance Co. v. Glasbrenner*, 417 F.3d 353..........................................................15

*Hanly v. Powell Goldstein, L.L.P.*, 290 Fed. Appx. 435, 438.........................................................12

*International Shoe Co. v. Washington*, 326 U.S. 310 ....................................................14

*Kirk v. N.Y. State Department of Education*, 2008 U.S. Dist. LEXIS 24322 ................................15

*MPower Committee Corp. v. Voipld.com, Inc.*, 304 F.Supp.2d 473.............................................17

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32 .....................7

*McGraw-Hill Cos., Inc., v. Ingenium Technologies Corp.*, 375 F.Supp.2d 252............ 9, 10, 12-13

*McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771 ....................................................20

*Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS*, 315 F.Supp.2d 286 ...........................11

*New York v. Oneida Indian Nation*, 90 F.3d 58........................................................20, 23

*New York v. Operation Rescue Nat'l*, 240 Fed. Appx. 430, 431.................................................14

*Omni Consulting Group, Inc. v. Marina Consulting*, 2004 U.S. Dist. LEXIS 18015 ..............7, 14

*Panetta v. Crowley*, 460 F.3d 388.................................................................................23

*Reynolds Corp. v. National Operator Services, Inc.*, 73 F.Supp.2d 299 ........................15

*Roberts-Gordon v. Superior Radiant Products*, 85 F.Supp.2d 202 ................................12

*Schomann International Corp. v. Northern Wireless, Ltd.*, 35 F.Supp.2d 205.............15

*Sea Tow Services International, Inc. v. Pontin*, 472 F.Supp.2d 349 .............................15

*Specht v. Netscape Communs. Corp.*, 306 F.3d 17 ......................................................20

*Thomas Publ'g Co. v. Industrial Quick Search*, 237 F.Supp.2d 489 .......................7, 10

## STATUTES

28 U.S.C. §1391(b) .................................................................................................15, 16

28 U.S.C. §1404 ..............................................................................................................17

Fed. R. Civ. P. 12(b) .........................................................................................................6

NY CPLR 302(a)(1)…...........................................................................................7, 9, 11

NY CPLR 302(a)(3).................................................................................................7, 11-13

Plaintiff Xerox Corporation ("Xerox") respectfully submits this Memorandum of Law in opposition to Plaintiff Arizona Digital Products Inc. ("ADP")'s motion to dismiss the Complaint or transfer this action to Arizona.

## PRELIMINARY STATEMENT

On October 23, 2008, Xerox filed this action against ADP, asserting claims for failure to remit payment on outstanding sales invoices totaling $25,874.98 for products ADP acquired from Xerox, misuse of demonstration products and consumable supply products ADP acquired from Xerox, and infringement of Xerox's intellectual property and trademark.  ADP gained access to Xerox's property by entering into a Business Relationship Agreement ("BRA") and an Authorized Dealer Schedule ("Dealer Schedule") with Xerox, a New York corporation.  These contracts were drafted, approved, and/or executed by Xerox employees in Rochester, New York. The relationships between Xerox and its Agents and Dealers, including ADP, are managed and supported in many material aspects from New York.  As a result, ADP had direct or indirect communication with personnel in Xerox's Rochester office over a period of six years.  Xerox's claims are based on ADP's actions, which went beyond those permissible for an Authorized Sales Agent or Authorized Dealer, and caused injury to Xerox in New York.

In response to the Complaint, ADP filed the present motion to dismiss or transfer, asserting that the Court lacks personal jurisdiction over it and subject matter jurisdiction over Xerox's claims, and contending that venue is improper, or that the matter should be transferred to the United States District Court for the District of Arizona for the convenience of ADP and its witnesses.  As shown below, ADP's motion to dismiss must be denied because: (i) personal jurisdiction exists over ADP under New York's long-arm statute; (ii) venue is proper in the Western District of New York because ADP's action caused Xerox harm in Rochester; (iii) ADP

- 2 -

has failed to make the requisite "strong showing" meriting disturbance of Xerox's choice of

venue; and (iv) subject matter jurisdiction exists over Xerox's claims, all of which are either

expressly excluded from the scope of the parties' arbitration agreement, or arise independently of

the BRA.

## FACTUAL BACKGROUND

Xerox is a New York corporation. Its primary location in New York is in Rochester.

Xerox sells its products through a variety of distribution channels, including through Authorized

Sales Agents ("Sales Agents"), who enter into a written contract known as a Business

Relationship Agreement ("BRA") under which a Sales Agent facilitates sales made by Xerox

itself to end user customers. *See* Affidavit of Dennis Eychner ("Eychner Aff.") at ¶¶ 4-5. ADP

was a Xerox Sales Agent from 2002 to 2008, and also took on the additional role of an

Authorized Xerox Dealer ("Authorized Dealer") by signing an Authorized Dealer Schedule,

which incorporated additional rights and obligations, including the right to purchase and re-sell

certain Xerox products. Eychner Aff. at ¶¶ 2, 6.

The Xerox group that manages and oversees Authorized Sales Agents and Authorized

Dealers (including ADP) is part of Xerox's North American Agent Operations ("NAAO").

Other than field representatives, the personnel who manage most aspects of the relationships

between Xerox and its Sales Agents and Authorized Dealers are located in Rochester, including

most of the employees in the NAAO division. Eychner Aff. at ¶¶ 8, 11. The head of the sales

channel for Sales Agents and Authorized Dealers, NAAO President Jule Limoli, works in the

Rochester office. The Vice President of NAAO Incentive Compensation, Dennis Eychner, also

works in Rochester, where he directs the group responsible for Xerox Authorized Sales Agent

compensation and assigning customer responsibility among channels. Mr. Eychner also handles

- 3 -

certain strategic special projects involving Xerox Agents and Dealers, such as revision of the form of the Sales Agent contract.  Eychner Aff. at ¶¶ 9, 10.

Contact with Rochester permeates Xerox's relationship with Agents and Dealers.  The Dealer Schedule executed between Xerox and ADP was signed on behalf of Xerox by Kenneth E. Sarvis, who worked in the Rochester office at the time, and on information and belief, signed the agreement in Rochester.  Eychner Aff. at ¶ 13.  The BRA and Dealer Schedule signed by ADP were drafted in Rochester.  Any negotiated change to the BRA and Dealer Schedule would have required the approval of NAAO managers in Rochester.  Eychner Aff. at ¶¶ 14-15.  The BRA and Dealer Schedule between Xerox and ADP were not modified or changed from the standard form in any respect.  Eychner Aff. at ¶ 16.  The territories that each Sales Agent or Authorized Dealer are contractually permitted to operate within, including ADP, are determined by Mr. Eychner's group in Rochester.  Eychner Aff. at ¶ 17.  BRAs and Dealer Schedules must be approved by NAAO managers who are located in Rochester.  Eychner Aff. at ¶ 18.

As a Sales Agent and Authorized Dealer, ADP had significant, frequent, direct and indirect communications and transactions with the NAAO group in Rochester, relating to a number of topics essential to ADP's relationship with Xerox.  Eychner Aff. at ¶ 19.  For example, Sales Agents and Authorized Dealers, including ADP, were required to meet annual sales quotas pursuant to Section 4.1 of the BRA and Section 4.1 of the Dealer Schedule.  These quotas were established by personnel in Rochester under Mr. Eychner's supervision.  The annual quota information was mailed from Rochester directly to the Sales Agents and Authorized Dealers.  Eychner Aff. at ¶ 20.  Sales Agents and Authorized Dealers received monthly sales performance evaluations and compensation information pursuant to Section 4.2 of the BRA and Section 4.2 of the Dealer Schedule.  These reports were prepared by Xerox employees located in

- 4 -

Rochester, and posted to a computer server housed in Rochester, which Sales Agents and Dealers accessed via the internet. Eychner Aff. at ¶¶ 21-22. Compensation for Sales Agents and Dealers, including ADP, was calculated, managed and processed in Rochester. Compensation levels, which are set pursuant to Section 3.4 of the Sales Agent Schedule, were communicated to Sales Agents and Authorized Dealers directly from Rochester. Eychner Aff. at ¶ 23. Payments to Dealers and Sales Agents were also remitted from Rochester. Eychner Aff. at ¶ 24.

As an Authorized Dealer, ADP purchased Xerox products from Rochester. The orders were telephoned or faxed by the Dealer to Rochester, the order was processed in Rochester, and Rochester employees arranged for the shipping of the ordered products to dealers such as ADP. Eychner Aff. at ¶¶ 25-26. ADP would have also ordered demonstration models, such as those that are the subject of Xerox's claims in this litigation, pursuant to Section 2.4 of the Sales Agent Schedule, by contacting Xerox employees in Rochester to place orders. Eychner Aff. at ¶ 25. Shipping of the demonstration models to ADP would have been arranged in Rochester. Eychner Aff. at ¶ 27. Invoices billing Authorized Dealers for products purchased (such as ADP's outstanding invoices that are the subject of this action), are prepared in Rochester from information maintained in Rochester. Eychner Aff. at ¶ 28. Financing and credit for Authorized Dealers to purchase Xerox products is handled by personnel in Rochester. Eychner Aff. at ¶ 29.

The majority of technical support for Sales Agents and Authorized Dealers is provided by Xerox employees located in Webster, New York. Eychner Aff. at ¶ 30. When Sales Agents and Authorized Dealers such as ADP have technical questions, they receive assistance and support from Xerox employees located in Webster or Rochester by phone or email. Though ADP asserts that some training and support is supplied by Xerox personnel located in other parts of the country, the home base for all Sales Agent and Dealer support is Rochester. In addition, the field

representatives are supervised by personnel in Rochester.  Eychner Aff. at ¶ 30.  Marketing support for Sales Agents and Dealers is also located in Rochester.  The materials at issue here would have been created and/or prepared in Rochester, and reviewed and approved by managers located in Rochester.  Eychner Aff. at ¶ 31.

Most of Xerox's potential witnesses, as well as documents (including the BRA and Dealer Schedule for ADP), and documents relating to ADP's sales goals and compensation, programs and incentives, ADP product orders, including the products that are the subject of this action, payment of compensation, and other significant documentation relating to ADP Sales Agent and Xerox relations, and computer databases showing sales to customers through Sales Agents such as ADP, including the consumer supplies that are the subject of the claims in this action, are maintained in Rochester.  Eychner Aff. at ¶ 32.  At least six potential Xerox witnesses work or reside in the Rochester area:

- Mr. Limoli, who is expected to testify to Xerox's policies regarding use of its trademarks and intellectual property by Sales Agents and Authorized Dealers such as ADP, and the injury that misuse of trademarks or intellectual property causes to Xerox;

- Mr. Eychner, who is expected to testify regarding the terms and conditions of ADP's agreements with Xerox;

- NAAO Vice President of Marketing Alan Vasan, who is expected to testify about marketing, advertising and permissible use of Xerox trademarks;

- NAAO Vice President of Finance Darlene Caldarelli, who is expected to testify regarding Xerox's claim for payment;

- Edmund Guerrero, who is responsible for the oversight of the Authorized
  Dealer line of distribution, is expected to testify about the responsibilities and
  duties of Xerox Sales Agents and Authorized Dealers, including their duties
  upon termination; and

- Dealer Service Operations Manager, Sharon Ortiz, who is expected to testify
  regarding technical service operations for dealer products such as the products
  Xerox supplied to ADP.

Eychner Aff. at ¶¶ 33-38.

Finally, as ADP offered products for sale to customers across the country via the Internet,
it is unknown before discovery whether there are New York witnesses who could testify
regarding ADP's wrongful sales of stolen consumable goods via the Internet.  Complaint at ¶ 42.

## ARGUMENT

## POINT I

### PERSONAL JURISDICTION EXISTS OVER ADP

Personal jurisdiction exists over ADP under New York law because 1) ADP conducted
business in the state of New York; and 2) ADP committed a tortious act which caused reasonably
foreseeable injury in New York.  When reviewing a motion to dismiss for lack of personal
jurisdiction under Fed. R. Civ. P. 12(b)(2), the Court construes the pleadings in the light most
favorable to the plaintiff, resolving all doubts in the plaintiff's favor.  *Druck Corp. v. Macro
Fund*, 102 Fed. Appx. 192, 194 (2d Cir. 2004).  Prior to discovery, a plaintiff may defeat a
motion to dismiss by simply alleging facts that constitute a *prima facie* showing of personal
jurisdiction.  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Such a showing
is made when the plaintiff alleges facts sufficient to show that the defendant falls within New

York's long-arm jurisdiction statute, and that jurisdiction comports with federal due process standards. *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001).

To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court first determines whether jurisdiction exists under the law of the forum state. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). As the facts pleaded here demonstrate, specific jurisdiction exists over ADP under New York's long-arm statute, New York Civil Practice Law and Rules ("CPLR") 302(a)(1) and (a)(3), because ADP transacted business in New York and committed a tortious act that caused a reasonably foreseeable injury in New York that gave rise to the claims in the Complaint.[1]

A.     Specific Jurisdiction Exists Over ADP Pursuant to CPLR 302(a)(1)

A court may exercise personal jurisdiction under CPLR 302(a)(1) if the defendant (1) "transacts any business" in New York; and (2) the plaintiff's cause of action arises from that business. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165-66 (2d. Cir. 2005). When a dispute relates to a contract, the considerations include: (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and/or defendant subsequently communicated with parties in the state regarding the contract; (iii) whether a choice-of-law provision appears in the contract;

---

[1]     ADP established, and continues to maintain, an ongoing presence in New York based on its agreement with Xerox, and the fact that it sells products online that are available for purchase by customers in New York. *See Omni Consulting Group, Inc. v. Marina Consulting*, 2004 U.S. Dist. LEXIS 18015, at *16-17 (W.D.N.Y. Aug. 31, 2004) (exercising general personal jurisdiction in part due to defendant's use of vendors and other service providers located in New York); *Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 491 (S.D.N.Y. 2002) (noting defendant's sale of items on the internet to buyers in New York as a factor supporting the court's exercise of general jurisdiction). Thus, it is also arguable that general personal jurisdiction exists over ADP pursuant to CPLR 301.

and (iv) whether the contract subjects the defendant to supervision in New York.  *See Agency Rent A Car System v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (exercising specific jurisdiction over defendants).

Under each of the *Agency* factors, jurisdiction exists over ADP.  First, like the defendants in *Agency*, ADP had an ongoing contractual relationship with Xerox for six years, during which ADP worked as a Xerox agent and dealer.  The claims in this action arise out of that extended contractual relationship.  The terms and conditions of that relationship were set and supervised by Xerox personnel located in Rochester, including the geographic territory in which ADP was authorized to sell Xerox products; the sales goals ADP was required to meet were set in Rochester; and ADP's compensation level was established in Rochester.  Section 9 of the Dealer Schedule gave ADP the right to purchase Xerox products, which ADP did by contacting Xerox in Rochester by fax or phone.  Eychner Aff. at ¶ 25.  Xerox's First Cause of Action is based upon these transactions by ADP to acquire products.

With respect to the second *Agency* factor, ADP signed the BRA, which was drafted in New York, and executed on behalf of Xerox by a representative who obtained authorization from Xerox managers in New York.  The Dealer Schedule was also drafted in New York and executed by a Xerox representative located in New York who, on information and belief, signed the document in New York.  Xerox's Second through Sixth Causes of Action relate to ADP's transactions relating to products acquired by ADP in breach of these agreements.  The Seventh through Ninth Causes of Action of the Complaint relate to ADP's breach of the trademark and intellectual property provisions of the BRA and Dealer Schedule.

In addition, during and subsequent to the execution of these contracts, ADP communicated directly and indirectly with Xerox employees located in New York on a frequent

basis: pursuant to Section 4.2 of the BRA, and Section 4.2 of the Dealer Schedule, ADP received

monthly evaluations prepared by personnel in Rochester, ordered products from Rochester

personnel pursuant to Section 9 of the Dealer Schedule, received invoices based on information

prepared in Rochester, and utilized Rochester-based marketing and technical support which was

provided pursuant to Section 6 of the Dealer Schedule.

Third, it is undisputed that the BRA provides for the application of New York law.

Finally, as to the fourth *Agency* factor, under the terms of Sections 4.1 and 4.2 the BRA and

Sections 4.1 through 4.3 of the Dealer Schedule, ADP agreed to be supervised by the personnel

in the Rochester-based NAAO office, who, as discussed above, monitored ADP's profitability

through monthly reports that were prepared in Rochester and directly conveyed to ADP.  ADP

also agreed to abide by a code of conduct as described in Section 5.1 of the BRA.

In sum, the causes of action asserted by Xerox each relate to ADP's contact with New

York: ADP's failure to pay for products that it purchased from Xerox's Rochester office; ADP's

misuse of products and demonstration equipment it acquired from Xerox in New York; and

ADP's abuse of Xerox's trademark and intellectual property in violation of Section 3 of the BRA

accepted in New York.  In short, Xerox's claims arise from ADP's knowing transaction of

business with Xerox in New York pursuant to the BRA and Dealer Schedule, and ADP's

subsequent breach of its obligations under those agreements and invoices.

The six-year collaborative relationship between Xerox and ADP is also of significant

importance in establishing personal jurisdiction.  In *McGraw-Hill Cos., Inc., v. Ingenium*

*Technologies Corp.*, 375 F. Supp.2d 252 (S.D.N.Y. 2005), the court held that personal

jurisdiction existed over the defendant pursuant to CPLR 302(a)(1), in part because the plaintiff

negotiated and executed its side of an ongoing distribution agreement in New York.  *Id.* at 254.

- 10 -

Furthermore, after the contract was executed, the defendant worked closely with the New York plaintiff: the parties jointly marketed and developed products, the defendant sent monthly revenue and expense reports to the plaintiff in New York, and "was in constant telephonic and computer contact" with the plaintiff, as well as with its own customers for the same products. *Id.* at 256-57.  Here, as in *McGraw-Hill,* an employee based out of New York executed the Dealer Schedule on behalf of Xerox.  Furthermore, ADP communicated with Xerox employees in New York via phone, mail, and internet communications on a monthly, if not more frequent, basis regarding compensation, orders and other matters.  Eychner Aff. at ¶ 19.  The *McGraw-Hill* court also gave weight to the fact that, like ADP, the defendant had its own New York customers, selling the product at issue in New York through internet sales.  *Id.* at 256, Complaint at ¶ 42, Exh. H.  Thus, ADP was doing business with Xerox in New York in a manner that establishes personal jurisdiction, and also used Xerox's products to make itself available to do business with New York.  *See Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 491 (S.D.N.Y. 2002) (noting defendant's sale of items on the internet to buyers in New York as a factor supporting the court's exercise of personal jurisdiction).

The fact that ADP's employees never traveled to New York is irrelevant.  Indeed, "in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State."  *Creative Socio-Medics Corp. v. City of Richmond,* 219 F. Supp. 2d 300, 307 (E.D.N.Y. 2002) (citation omitted).  In *Socio-Medics*, the court held that personal jurisdiction existed over a defendant who contracted with a New York based plaintiff for software and consulting services.  All the contract schedules were prepared by the plaintiff in New York, and expectations were negotiated by telephone, e-mail, and standard mail.  *Id.* at 303.  The plaintiff spent considerable hours of time and resources in New York

developing products and services for delivery to the defendant.  *Id.* at 308.  The court held that personal jurisdiction existed over the defendant because the terms of the contract and behavior of the parties established "an on-going contractual relationship with a New York corporation that should have been foreseen at the time the parties entered into the contract."  *Id.* at 306.

The *Socio-Medics* case is on all fours with the instant case: the operative contracts, compensation determinations and evaluations were all drafted in New York and sent directly to ADP, and ADP must have known it was doing business with a New York corporation through Xerox's NAAO organization based in Rochester.  Personnel in Xerox's New York office spent considerable time developing Xerox products, marketing, and support materials for Sales Agents and Authorized Dealers.  Most significantly, the BRA and Dealer Schedule clearly anticipated an ongoing contractual relationship, under which ADP agreed to monthly supervision and annual evaluation in exchange for sales support from Xerox's Rochester offices for six years.

ADP entered into several contracts with a New York company, which established an ongoing relationship in which ADP was in frequent direct and indirect contact with personnel in Xerox's New York offices.  Xerox's claims arise out of ADP's breach of its obligations under those contracts.  Thus, personal jurisdiction exists over ADP, regardless of whether a portion of ADP's dealings with Xerox took place outside of New York.  *See Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS*, 315 F. Supp. 2d 286, 291-92 (W.D.N.Y. 2004) (foreign defendant entered into a distribution agreement with plaintiff, and repeatedly communicated by phone and electronic communications in an ongoing relationship, establishing jurisdiction under 302(a)(1)).

B.    Specific Jurisdiction Exists Over ADP Pursuant to CPLR 302(a)(3)

Personal jurisdiction exists under CPLR 302 (a)(3)(ii) when a non-domiciliary commits a tortious act that causes injury within the state and has "an active interest in interstate or international commerce coupled with a reasonable expectation that the tortious conduct in

- 12 -

question could have consequences within the State." *Hanly v. Powell Goldstein, L.L.P.*, 290 Fed. Appx. 435, 438 (2d Cir. 2008) (citation omitted).  This exercise of jurisdiction is applicable to torts of conversion (as alleged in the Second through Fourth Causes of Action), as well as copyright and trademark infringement (as alleged in the Seventh through Ninth Causes of Action), which New York courts have held cause injury in the state where the owner of the infringed intellectual property is located. *Roberts-Gordon v. Superior Radiant Prods.*, 85 F. Supp. 2d 202, 216 (W.D.N.Y. 2002).  Not only do torts regarding copyright and trademark cause injury in the state, New York courts have held that it is reasonably foreseeable that tortious conduct which infringes the copyrights and trademarks of a New York company will have consequences in New York, satisfying the second prong of the test under CPLR 302(a)(3)(ii). *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000).  With respect to the third prong of CPLR 302(a)(3)(ii), the threshold for establishing interstate commerce is not high: a defendant does not have to engage in commerce in New York specifically, but merely be demonstratively engaged in commerce at something broader than a local level.  *Roberts-Gordon*, 85 F. Supp. 2d at 217.

In *McGraw-Hill*, discussed above, the court found that personal jurisdiction existed over the defendant pursuant to CPLR 302(a)(3), as well as CPLR 302(a)(1).  *McGraw-Hill*, 375 F. Supp.2d at 256.  The court held that the *McGraw-Hill* defendant's alleged infringement of the New York plaintiff's intellectual property caused an injury occurring in New York, where the patents were held, and was unquestionably foreseeable since defendant was fully aware of the plaintiff's residence.  *Id.*  It is undisputed that Xerox is a New York corporation.  The copies of Xerox's trademark registrations attached to the Complaint as Exhibit E are all attributed to Xerox as a New York corporation. Thus, abuse of Xerox's marks caused an injury in New York, where

- 13 -

the marks were held.  Furthermore, a portion of ADP's abuse of the Xerox mark was conducted

over the internet, as ADP wrongfully advertised using the Xerox mark after it had been

terminated as a Sales Agent and Dealer, and sold Xerox products over the internet, on a website

that was available for access by customers in all 50 states, including New York.  Complaint at ¶

42, Exh. H.

The injury caused by ADP's torts was also reasonably foreseeable in New York.  As

pointed out in *McGraw-Hill*, 375 F. Supp.2d at 256, and *Citigroup Inc.*, 97 F. Supp. 2d at 568,

the known fact that the corporation holding the trademarks is a New York company is enough to

establish that injury in New York was reasonably foreseeable.  The BRA and Authorized Dealer

Schedule clearly state that Xerox is a New York corporation, and ADP's violation of Xerox's

trademark was therefore accompanied by a reasonable expectation of possible injury in New

York.

ADP has also engaged in the threshold level of interstate commerce necessary to meet the

third requirement of CPLR 302(a)(3)(ii).  First, ADP entered into the BRA and Dealer Schedule

with a New York company and purchased products from Xerox in New York for resale, clearly

engaging in commerce beyond the local level.  Secondly, as discussed above, ADP makes its

products and services available to customers in any state via its website.  ADP is undoubtedly

engaged in commerce beyond the local level, and this Court may exert jurisdiction over it

pursuant to CPLR 302(a)(3)(ii).  *Roberts-Gordon*, 85 F. Supp. 2d at 217.

The case on which ADP relies, *Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir.

1997), is distinguishable.  *Bensusan* involved an alleged infringement by a single restaurant

located in Missouri, which had a similar name to a restaurant located in New York.  The parties

were not affiliated with each other, had no existing relationship, and had no communication

outside of the trademark dispute.  The trademark in question was procured several years after

defendant opened his restaurant, a small venue frequented by local residents.  *Id.* at 29.  The

court's finding in *Bensusan* that defendant should not have reasonably expected to cause injury

in New York, and did not engage in interstate commerce, has no application to this dispute.

     C.    <u>The Exercise of Personal Jurisdiction Over ADP Comports with Due Process</u>

     Finally, for all the reasons discussed above, the exercise of personal jurisdiction over

ADP comports with principles of due process pursuant to *Int'l Shoe Co. v. Washington,* 326 U.S.

310 (1954) and its progeny.  To meet the demands of due process, a defendant's contacts with

the forum state must be such that maintenance of the suit does not offend "traditional notions of

fair play and substantial justice." *Id.* at 316.  If a defendant should have reasonably foreseen

"being haled into court in New York" then "[t]he exercise of personal jurisdiction…is in

accordance with New York law and constitutional due process."  *New York v. Operation Rescue

Nat'l,* 240 Fed. Appx. 430, 431 (2d Cir 2007).

     Having entered into a relationship with a New York corporation, governed by New York

law and spanning more than six years, ADP cannot claim to be surprised by being named in a

New York lawsuit.  ADP was in monthly communication with the Rochester office, was

supervised and evaluated by personnel located in Rochester, purchased products as an

Authorized Dealer from Rochester, and received marketing and technical support from

Rochester.  Thus, exercise of jurisdiction over ADP will not offend principles of due process or

fairness. *See, e.g., Omni Consulting Group, Inc. v. Marina Consulting, Inc.*, 2004 U.S. Dist.

LEXIS 18015, *18 (W.D.N.Y. Aug. 21, 2004) (due to defendant's demonstrated business ties

with New York, court could not find that "the notions of fair play or substantial justice are in any

way disturbed by a finding that [defendant] is subject to personal jurisdiction in New York.").

- 15 -

## POINT II

### VENUE IS PROPER IN THE WESTERN DISTRICT OF NEW YORK

The Second Circuit has interpreted 28 U.S.C. §1391(b) (the civil venue statute), to permit venue in a judicial district "as long as 'a substantial part' of the underlying events took place" in that district. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355, 357 (2d Cir. 2005) ("to avoid dismissal 'the plaintiff need only make a prima facie showing of venue.'"). To defeat ADP's assertion that venue is not proper in the Western District of New York, Xerox "does not have to prove that [its] chosen venue is the best forum for the action…[but] only demonstrate that the choice is a permissible one." *Reynolds Corp. v. Nat'l Operator Services, Inc.,* 73 F. Supp. 2d 299, 306 (W.D.N.Y. 1999); *see also, Schomann Int'l Corp. v. Northern Wireless, Ltd.,* 35 F. Supp. 2d 205, 212 (N.D.N.Y. 1999) ("it is sufficient that a substantial part of the events occurred here, even if a greater part of the events occurred elsewhere").

A plaintiff can meet the "substantial part" standard in several ways. In actions relating to contract, partial execution of a contract in New York, as well as contract negotiations involving phone calls and electronic communications with parties in New York, are adequate to establish venue there. *Sea Tow Servs. Int'l, Inc. v. Pontin,* 472 F. Supp. 2d 349, 364 (S.D.N.Y. 2007). An ongoing contractual relationship that requires a defendant to periodically communicate with New York plaintiffs also supports a finding of proper venue. *Id.* As discussed above, ADP was in an ongoing contractual relationship with Xerox, a New York corporation, which required frequent communications with Rochester-based personnel. ADP's breach of that contractual relationship clearly arises in part within this jurisdiction.

Harm flowing to a party in New York can also establish venue: the Western District recently noted that "the fact that the Plaintiff suffers harm in a particular judicial district is sufficient to satisfy" the venue statute. *Kirk v. N.Y. State Dep't of Educ.*, 2008 U.S. Dist. LEXIS

24322, at *10 (W.D.N.Y. Mar. 25, 2008).  ADP's failure to pay invoices has caused harm in this venue, as has ADP's abuse of Xerox's trademarks, which are held in New York.  In addition, factors present here, such as ADP's decision to enter into a contract governed by New York law with a plaintiff located in the Western District, under which ADP is supervised by that New York plaintiff, indicate that venue is proper.  *Corning Data Servs. v. Kermick*, 2007 U.S. Dist. LEXIS 52088, at *9 (W.D.N.Y. July 18, 2007).

The Western District of New York is not only a permissible forum for this action, but is the best forum for this action because "it is the place where a substantial part of the events giving rise to the claims occurred" as provided in 28 U.S.C. §1391(b)(2).  Complaint, ¶ 57.  This is in part a contract action and the contract was prepared by Xerox in New York.  Xerox is a New York corporation, as ADP knew when it voluntarily and knowingly entered into the BRA and Dealer Schedule.  ADP expressly consented in Section 8.8 of the BRA to be subject to the laws of New York, and ADP was in frequent communication with Xerox's Rochester employees.  Moreover, with respect to the tort claims, ADP's acts have caused injury to Xerox in New York.

Because a substantial part of the events giving rise to Xerox's Complaint occurred in the Western District of New York, this Court should find that venue is proper in this District.

**POINT III**

**ADP CANNOT MAKE A CLEAR SHOWING THAT VENUE
SHOULD BE TRANSFERRED TO THE DISTRICT OF ARIZONA**

Not only is venue proper in the Western District of New York, but to the extent that ADP is seeking transfer based on convenience of its witnesses under  28 U.S.C. §1404(a), it has not met its burden of making a clear showing that "the convenience of parties and witnesses, [and] the interest of justice" require this matter to be transferred away from this District.

- 17 -

The Western District has explained that "it is the defendants' burden to make a strong showing in favor of transfer, and a plaintiff's choice of forum will not be lightly disturbed, especially where, as here, the plaintiff resides in the judicial district where the suit is filed." *MPower Comm. Corp. v. Voipld.com, Inc.*, 304 F. Supp. 2d 473, 474 (W.D.N.Y. 2004) (citation omitted). Furthermore, a defendant "must support [his] motion with an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and general statement of the substance of their testimony." *Id*. at 475.

ADP does not dispute that Xerox's business location is within the Western District of New York. Therefore, Xerox's "choice of forum will not be lightly disturbed" absent a "strong showing in favor of transfer." *Id*. at 474. ADP has not made the requisite "strong showing" in favor of transferring this action away from this District.

This Court's recent decision in *Bausch & Lomb Inc. v. CIBA Vision Corp.,* 2008 U.S. Dist. LEXIS 56183 (W.D.N.Y. Jul. 21, 2008) (Siragusa) is directly on point. There, the defendants sought transfer of the action from the Western District of New York to the Eastern District of Texas. The Court noted that the following factors, among others, should be considered in a Section 1404(a) analysis: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the forum's familiarity with the governing law; (6) the weight accorded the plaintiff's choice of forum; and (7) trial efficiency and the interests of justice, based on the totality of circumstances. *Id.* at *5-6. Denying the motion to transfer venue, the Court gave weight to the fact that plaintiff's witnesses and corporate officers resided in this District, that the relevant documents were located in New York and other states in the

- 18 -

Northeast, and that the choice of law clause called for the application of Delaware law, which

"this Court is as competent to interpret and apply…as is the Eastern District of Texas." *Id.* at

*11. Finally, the Court gave "substantial consideration" to the fact that plaintiff chose its home

district as the venue in which to bring the action. *Id.*   A weighing of the factors described in

*Bausch & Lomb* compels the conclusion that ADP's motion to transfer venue must be denied.

The balance tips in favor of maintaining this matter in New York. First, Xerox has

named six potential witness who work in Rochester, New York, while ADP has only named five

in Arizona. Eychner Aff. at ¶¶ 33-38. Mr. Limoli is expected to testify to Xerox's policies

regarding use of its trademarks and intellectual property by Sales Agents and Authorized Dealers

such as ADP, and the injury that misuse of trademarks or intellectual property causes to Xerox.

Mr. Eychner is expected to testify regarding the terms and conditions of ADP's agreements with

Xerox. NAAO Vice President of Marketing Alan Vasan is expected to testify about marketing,

advertising and permissible use of Xerox trademarks. NAAO Vice President of Finance Darlene

Caldarelli is expected to testify regarding Xerox's claim for payment. Edmund Guerrero, who is

responsible for the oversight of the Authorized Dealer line of distribution, is expected to testify

about the responsibilities and duties of Xerox Sales Agents and Authorized Dealers, including

their duties upon termination. Dealer Service Operations Manager, Sharon Ortiz, is expected to

testify regarding technical service operations for dealer products such as the products Xerox

supplied to ADP.

Second, the majority of Xerox's documents and files relating to ADP are housed in

Rochester. Eychner Aff. at ¶ 32. Third, travel to Arizona is as inconvenient as travel to

Rochester, so neither forum is more convenient to both parties. Fourth, many of the important

facts to this action arose in Rochester, including arrangements for shipment of products and

intellectual property to ADP that are the subject of this action, monitoring and review of ADP's

performance, and the provision of marketing and technical support.  The fifth factor weighs

strongly in favor of the case remaining venued here - New York law governs the BRA and

Dealer Schedule, which this Court is best equipped to apply.  Furthermore, this Court is more

than capable of considering the questions of federal law raised in this action.  The sixth factor,

which is given "substantial consideration," favors Xerox's choice to file in the District where it is

located, as does the seventh factor, since all parties are subject to the jurisdiction of this Court.

   ADP does not proffer facts which make a "strong showing in favor of transfer."  While

ADP contends that its business records relating to this matter are located in Arizona, it does not

assert that these records are so voluminous that they cannot be copied and delivered to New

York.  *See Arma v. Buyseasons*, 2008 U.S. Dist. LEXIS 99724 (S.D.N.Y. Dec, 8, 2008) at *29

("the location of records is not a compelling consideration when records are easily portable.").

With respect to judicial economy, not only does ADP admit that the Western District of New

York appears to have a less crowded calendar than the District of Arizona; it cannot deny the fact

that the Western District is most competent to apply New York law as required by the BRA.

Furthermore, convenience to Xerox should also be considered.  Xerox works with nearly 330

Authorized Sales Agents nationwide, in 50 states and Puerto Rico. Eychner Aff. at ¶ 7.  Though

Xerox may have more resources than an individual Sales Agent, those resources would quickly

be drained if Xerox were constantly required to litigate in remote, inconvenient locations with

respect to each Sales Agent.

   ADP makes several assertions in its Memorandum of Law regarding the location in

which events occurred, such as its receipt of training and technical support from Xerox personnel

in California, and correspondence with Xerox personnel in Washington, that are not supported

- 20 -

by any affidavit, and these assertions should therefore be given no weight.  Furthermore, each of

the Xerox regional representatives identified by ADP in its papers worked under Mr. Limoli's

direct or indirect supervision at times during the relevant time period.  Eychner Aff. at ¶ 12.

## POINT IV

### THE COURT HAS SUBJECT MATTER
### JURISDICTION OVER XEROX'S CLAIMS

ADP asserts that subject matter jurisdiction does not exist over Xerox's claims because

the BRA contained an arbitration clause.  However, the claims asserted in this action fall outside

of the scope of the arbitration clause, as they relate to ADP's obligations arising from separately

executed invoices, disputes regarding ADP's wrongful acquisition and subsequent conversion of

Xerox products, and intellectual property disputes, that are expressly excluded from the scope of

the arbitration clause.  Thus, Xerox is not obligated to arbitrate these claims.

A party is not obligated to arbitrate claims that do not fall within the scope of the relevant

arbitration clause.  *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771, 773 (2d Cir. 2001)

(affirming denial of motion to compel arbitration).  As a matter of basic contract interpretation, a

party may not be compelled to arbitrate a dispute which is expressly excluded from the

arbitration clause's scope.  *New York v. Oneida Indian Nation*, 90 F.3d 58, 59 (2d Cir. 1996)

("We hold that the State's claim in this case is not subject to mandatory arbitration because the

parties specifically excluded it from the general arbitration clause.").

Furthermore, despite the fact that a party has agreed to arbitrate certain disputes, it cannot

be compelled to arbitrate issues that do not "touch matters" covered by the arbitration clause.

For example, in  *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 36 (2d Cir. 2002), the

Second Circuit affirmed denial of the defendants' motion to compel arbitration of claims brought

under federal privacy law.  Defendants argued the claims were arbitrable pursuant to a software

12355688.6

- 21 -

license agreement between them and plaintiffs.  The Court disagreed, noting that the issues

raised in the complaint were "collateral" to the terms of the license agreement, and that

"plaintiffs' claims present no question involving construction of the [license agreement], and no

questions in respect of the parties' rights and obligations under it." *Id.* at 38 (citation omitted).

The claims against ADP in the instant case are all either expressly excluded from the

BRA's arbitration clause or do not "touch matters" discussed in the BRA.  Xerox's First Cause

of Action relates to ADP's failure to pay for products it acquired from Xerox.  ADP's duties with

respect to this claim arise solely from the invoices for each transaction, which reflect ADP's

promise to pay for goods purchased.  Evaluation of this claim does not require any reference to

the BRA, and could be asserted even if the BRA had never been executed.  Thus, this dispute

does not arise under the terms of the BRA, but under basic principles of contract law, and Xerox

is not required to arbitrate the claim asserted in the First Cause of Action.

Xerox is also not obligated to arbitrate any of the claims in the Complaint because each is

expressly excluded from the arbitration clause's scope.  The arbitration clause in the BRA

expressly provides that neither party is obligated to arbitrate disputes regarding "transactions

involving the acquisition of products and/or services by [ADP] from Xerox; and…the use or

retention of either party's intellectual property or confidential, proprietary or sensitive

information."  Complaint at Ex. A.

As noted, the First Cause of Action is based upon ADP's failure to pay for product it

acquired.  The Second through Fifth Causes of Action arise out of ADP's wrongful acquisition

and subsequent misuse of Xerox products that it acquired, including use of Xerox demonstration

products and Xerox consumable products to run a print shop.  The demonstration materials were

acquired by ADP with the express agreement that they would be used for educating prospective

customers on the unique and customized features of Xerox copiers.  Instead, ADP used the demonstration products to make and sell photocopies for its own profit.  This dispute over an impermissible acquisition and use of Xerox products is expressly excluded from the agreement to arbitrate.

The Third and Fourth Causes of Action assert that ADP engaged in additional unlawful transactions with Xerox products it acquired, first stealing and later selling Xerox's consumable products for its own gain.  ADP misleadingly represented to Xerox customers that the consumable products, which had been provided to the third party customers pursuant to their own agreements with Xerox, would be replaced by Xerox, wrongfully acquiring Xerox products in a manner causing injury to Xerox.  Complaint at ¶ 69. These Causes of Action all arise from a dispute regarding "transactions involving the acquisition of products and/or services by [ADP] from Xerox."  Thus, these claims are expressly excluded from the arbitration clause's scope.

The Sixth through Ninth Causes of Action relate to ADP's abuse of the Xerox mark in ADP's advertising and signage after the termination of the BRA in a way that was intended to cause confusion.  These claims constitute a dispute regarding "the use or retention of either party's intellectual property or confidential, proprietary or sensitive information" and are also expressly excluded from the agreement to arbitrate.

All of the causes of action asserted in the Complaint fall within the express exclusion of the agreement to arbitrate.  Additionally, the claims relate to obligations arising under invoices that do not "touch matters" address in the BRA, ADP's improper acquisition and use of Xerox's proprietary materials, and ADP's misuse of Xerox's intellectual property and proprietary

- 23 -

information.  Xerox is under no obligation to arbitrate, and ADP's "defenses must be presented

to the district court, not an arbitrator."  *Oneida Indian Nation*, 90 F.3d at 59.[2]

## POINT V

### ADP IS NOT ENTITLED TO ATTORNEY'S FEES

ADP's contention that it is somehow entitled to attorney's fees is completely devoid of

merit.  ADP cites no case law for its position, nor could it.  It is well settled that "a plaintiff

should not be assessed his opponents attorney's fees unless a court finds that his claim was

frivolous, unreasonable, or groundless."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412,

422 (1978); *Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2005) (affirming denial of attorney's

fees).  A plaintiff will not be assessed attorney's fees as long as his claim has a basis in fact.

*Panetta,* 460 F.3d at 399.  The Complaint in the instant case goes far beyond this low threshold:

Xerox has asserted valid claims relating to ADP's wrongful acquisition and conversion of

Xerox's property, infringement on Xerox's trademark and intellectual property, and its failure to

pay for invoiced materials.  Xerox has asserted valid claims which, ADP must defend and for

which it is not entitled to attorney's fees.

## CONCLUSION

ADP's motion to dismiss must be denied in full.  First, Xerox has established a *prima*

*facie* showing that personal jurisdiction exists over ADP pursuant to New York's long arm

---

[2]    It is important to note that because ADP has not filed a motion to compel arbitration of the instant dispute, its argument should be given little weight.  In fact, Xerox has been cooperating with ADP to select an arbitrator for the case pending before the AAA, and may be required to assert counterclaims in the arbitration before this motion is decided, to protect its rights. Xerox's good faith efforts to arbitrate its disputes with ADP in no way constitutes a waiver of Xerox's right to litigate claims that do not fall within the scope of the arbitration agreement.

- 24 -

statute.  ADP entered into an ongoing business relationship with a New York corporation, in

which ADP was in frequent contact with the corporation's New York offices.  Jurisdiction also

exists over ADP due to its tortious behavior, which caused reasonably foreseeable injury in New

York.  Venue is proper in the Western District of New York, as a substantial part of the operative

facts in this action arose in New York.  Furthermore, ADP has not made the "strong showing"

required to justify a transfer of venue pursuant to 28 U.S.C. §1404(a), as more potential

witnesses and documents are located in New York, and the Western District of New York is best

equipped to apply New York and Federal law.  Finally, the Court has subject matter jurisdiction

over Xerox's claims, which are either expressly excluded from the parties' arbitration agreement

at issue, or arise independently from the BRA containing the arbitration clause.  ADP should not

be permitted to evade its responsibilities and obligations to Xerox, and is required to litigate this

dispute before this Court.

Dated: January 30, 2009
   Rochester, New York      Respectfully submitted,

                NIXON PEABODY LLP

            By:  /s/Carolyn G. Nussbaum
              Carolyn G. Nussbaum
              1100 Clinton Square
              Rochester, New York 14604
              Telephone: (585) 263-1558
              Fax: (585) 263-1600
              cnussbaum@nixonpeabody.com

              Of Counsel:

              NIXON PEABODY LLP
              Christopher M. Mason
              437 Madison Avenue
              New York, New York 10022
              Telephone: (212) 940-3000
              Fax: (212) 940-3111
              cmason@nixonpeabody.com

              *Attorneys for Plaintiff Xerox Corporation*

12355688.6