UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

XEROX CORPORATION, a New York Corporation,

                              Plaintiff,

  -vs-
                                                         DECISION AND ORDER

ARIZONA DIGITAL PRODUCTS, INC.,              08-CV-6480 (CJS)

                              Defendant.
_____

APPEARANCES

| For Plaintiff: | Carolyn G. Nussbaum, Esq.<br>Nixon Peabody LLP<br>1100 Clinton Square<br>Rochester, New York 14604 |
|---|---|
| For Defendant: | Mary Jo S. Korona, Esq.<br>Steven E. Cole, Esq.<br>Leclair Korona Giordano Cole LLP<br>39 State Street, Suite 500<br>Rochester, New York 14614 |

INTRODUCTION

In this action, Xerox Corporation ("Plaintiff") is suing its former authorized sales agent, Arizona Digital Products, Inc. ("Defendant") for breach of contract, conversion, trademark infringement, trademark dilution, and unfair competition. In a prior Decision and Order (Docket No. [#22]), the Court granted Defendant's motion to transfer venue to the United States District Court for the District of Arizona. Now before the Court is Plaintiff's motion for reconsideration [#23], brought pursuant to Federal Rule of Civil Procedure ("FRCP") 54(b). The application is denied.

1

RULE 54(b) STANDARD

FRCP 54(b) provides that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"Under Fed.R.Civ.P. 54(b) as well as the inherent power of the court to reconsider a prior decision at any time before the entry of final judgment, the major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Shervington v. Village of Piermont*, 732 F.Supp.2d 423, 425 (S.D.N.Y. 2010) (citations omitted).

28 U.S.C. § 1404 STANDARD

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  With respect to such an application,

> [i]n order to transfer a civil action under section 1404(a), the moving party must satisfy two requirements. First, the transferee court must be able to exercise jurisdiction over the parties and must be an appropriate venue for the action. Second, the balance of convenience and justice must favor transfer.  Although the first requirement is straightforward, the second requirement is essentially an equitable task left to the Court's discretion.
>
> Relevant factors include the: (1) deference accorded to plaintiff's choice of forum; (2) convenience to witnesses and parties; (3) situs of operative facts; (4) interests of justice and judicial economy; (5) relative ease of access to sources of proof; (6) availability of process to compel unwilling witnesses; (7) relative means of the parties; and (8) forum's familiarity with the governing law.
>
> When conducting this balancing test, the court enjoys broad discretion

>and decides based on notions of convenience and fairness on a case-by-case basis. The movant bears the burden of showing that transfer is warranted.
>
>Not all of the above factors merit equal weight. When plaintiff does not reside in and the operative facts bear little connection to the forum district, plaintiff's choice is shown less deference.
>
> ***
>
>The convenience of witnesses is the most important factor in deciding whether to transfer an action, although the court does not generally consider witnesses located outside both the current and transferee districts. The location of documents, on the other hand, is not a compelling consideration when records are easily portable. For the purpose of determining the "situs of operative facts," a court may make reasonable assumptions regarding the location of events if they are not clearly specified in the complaint.

*Harrison v. Samuel*, No. 05 Civ. 8914 (SAS), 2006 WL 1716867 at *2 (S.D.N.Y. Jun. 20, 2006) (Citations and internal quotation marks omitted).

When considering the relative means of the parties, "a mere shifting of inconveniences is not grounds for transfer." *Arrow Electronics, Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 266 (S.D.N.Y. 1989) (citation omitted). However, such factor may warrant a change of venue, where "a dramatic disparity in means exists," and where the defendant has made a showing that defending the action in the current district would be "unduly burdensome." *Id*. This is true even where both parties are corporations. *See, Actmedia, Inc. v. Ferrante*, 623 F.Supp. 42, 44 (S.D.N.Y. 1985) ("It would be both unfair and unjust to require the corporate defendant, a small start up operation, to defend a suit here concerning acts which took place some 3,000 miles away. Indeed, in such circumstances, even if plaintiff's case had no merit, it would succeed if through the expense and disruption of litigating in this district [defendant was] eliminated as a viable competitor."); *see also, 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp.

128, 135 (S.D.N.Y. 1994) ("Here, while ICF is not an individual, there is a disparity between the relative means of the two corporations. As plaintiff has conceded, 800-Flowers has far greater economic resources than ICF. ICF has been in business for less than a year with only a single place of business in Orlando, Florida. Accordingly, litigation in a distant forum could pose a significant financial burden on ICF. Thus, ICF's ability to effectively litigate could potentially be impaired if forced to litigate in New York. On the other hand, plaintiff has offices nationwide, with far greater capital at its disposal. While the Court is mindful that since both parties are corporations and thus this factor is not as significant as if the litigation were between an individual and a corporation, this factor, nevertheless, supports [a transfer of venue].") (Involving application of the "first filed rule," but noting, *id*. at 133, that "[t]he interests analysis under the first to file rule includes consideration of the same factors considered under a 28 U.S.C. § 1404(a) transfer motion.").[1]

BACKGROUND

In its prior Decision and Order, the Court set forth the following facts that pertain to the motion to transfer:

> Plaintiff is a New York corporation with its principal place of business in Connecticut, and with offices around the world, including in Rochester, New York. *Plaintiff is a Fortune 500 company with over fifty-thousand employees.* Defendant provides copier and printer services to businesses in the vicinity of Phoenix, Arizona. Defendant is an Arizona corporation with its sole place of business in Scottsdale, Arizona. Defendant is a small business with *seven employees, two of whom account for over ninety*

---

[1] To the extent that Plaintiff suggests that this factor has no applicability where both parties are corporations, the Court disagrees. *See, e.g., Rates Tech. Inc. v. UTT Corp.*, No. 94 CIV. 0326 (PKL), 1995 WL 16788 at *5 (S.D.N.Y. Jan. 18, 1995) (Applying factor where defendant was a corporation, but finding that defendant had not made a sufficient showing).

*percent of Defendant's sales revenue*.

(emphasis added). The Court further stated:

> In 2002 the parties entered into a Business Relationship Agreement ("the Agreement") and a Sales Agent Schedule ("the Schedule"). The Agreement established Defendant as an authorized dealer of Plaintiff's products in a designated "Dealer Territory," specified as the Arizona Counties of Maricopa and Pinal.[2] *The Agreement further stated that Defendant would have a single authorized business location, in Scottsdale, Arizona.* The Schedule authorized Defendant to service Plaintiff's equipment in a specific territory consisting of the Arizona Counties of Cochise, Gila, Graham, Greenlee, La Paz, Maricopa, Pima, Pinal, Santa Cruz, and Yuma. Under the Agreement and the Schedule, Defendant became an authorized Xerox Sales Agent for Maricopa County, Arizona. As a sales agent, Defendant was authorized to sell and lease Plaintiff's products to third-party customers in the aforementioned territory. Defendant was not permitted to solicit business outside the territory.
>
> ***
>
> On or about October 11, 2002, the parties executed an Authorized Dealer Schedule ("the Dealer Schedule"). (Cole Declaration, Exhibit B). The Dealer Schedule established Defendant as "a non-exclusive, authorized reseller for the promotion, sale, and installation of" Xerox's products in the Arizona Counties of Cochise, Gila, Graham, Greenlee, La Paz, Maricopa, Pima, Pinal, Santa Cruz, and Yuma. The Dealer Schedule was signed on behalf of Defendant by Roland, in Arizona. The Dealer Schedule was signed on behalf of Plaintiff by Kenneth E. Sarvis ("Sarvis"), Director of Business Operations, who, "upon information and belief," was physically located in Rochester, New York, at the time. (Eychner Aff. ¶ 13).
>
> ***
>
> The parties' business relationship continued for approximately six years. According to Plaintiff, "significant aspects" of the relationship were "managed from or by Xerox employees in Rochester, New York." (Eychner Affidavit ¶ 3). In that regard, a branch of Plaintiff's business known as the North American Agent Operations ("NAAO") oversaw Sales Agents and Authorized Dealers, including Defendant. *Id*. at ¶ 8. The NAAO was headquartered in Rochester. Defendant dealt directly

---

[2] Plaintiff has "approximately 327 Sales Agents in the United States who operate approximately 460 different Sales Agent territories covering all 50 states and Puerto Rico." (Eychner Affidavit ¶ 7).

primarily with NAAO "regional representatives," who were located outside of New York State. However, those regional representatives were subject to "direct or indirect supervision at times" by supervisors in Rochester, New York. *Id*. at ¶ 12. Plaintiff maintains that all form agreements were drafted in Rochester, New York, and had to be approved by supervisors in Rochester. Plaintiff further states that supervisors and other staff in Rochester determined Defendant's sales quotas, processed orders placed by Defendant, provided technical support, and remitted payments to Defendant.

Defendant, however, maintains that it dealt primarily with Xerox representatives in the Western U.S., not Rochester. In that regard, Defendant states that various business documents, such as an "Agent Analyst Addendum" and "Territory Amendment" were handled by Xerox employees in Arizona and California, respectively. (Roland Reply Aff. ¶ ¶ 2-4). Defendant further states that it received various types of assistance, including training support, equipment support, and sales assistance from Xerox employees in California, Arizona, Texas, Indiana, and Washington. *Id*. ¶ ¶ 5, 8-11.

\*\*\*

On June 26, 2008, Plaintiff terminated the Amended Agreement. The termination notice explained that Plaintiff was terminating the parties' business relationship because Defendant had breached the Amended Agreement in two respects. First, Plaintiff stated that Defendant was in breach of Section 2.4.1 of the Amended Agreement, because it was using Plaintiff's demo copier to run a print shop.[3] Second, Plaintiff stated that Defendant was in breach of Section 5.1 of the Amended Agreement, by engaging in unethical and dishonest acts, and specifically, by stealing Plaintiff's supplies. *Id*.[4]

\*\*\*

On July 25, 2008, Plaintiff sent Defendant a "cease and desist" letter (Complaint, Exhibit I), which stated that Defendant was in breach of the Amended Agreement in several respects. First, the letter stated that Defendant was in violation of Section 3.1 of the Amended Agreement, by continuing to refer to itself as an authorized Xerox sales agent on its website. In that regard, the letter stated, in relevant part: "The continued

---

[3]. "Xerox has learned that ADP operates a print for pay business at ADP's location. As of June 23, 2008, over 200,000 prints have been made on the Demo Unit." (Complaint, Exhibit G at 2).

[4]Plaintiff alleges that, pursuant to certain agreements that it had with third-party customers, whom Defendant serviced, the customers had in their possession certain supplies that still technically belonged to Plaintiff until used, which Plaintiff would replace once used. According to Plaintiff, Defendant took the supplies and either used them or sold them, knowing that Plaintiff would provide new supplies to the customers.

use of the XEROX name and trademark on your signage and website violates the terms of the [Amended Agreement].  The XEROX name and mark are valuable intellectual property assets owned by Xerox[.]" *Id*. at 1.  Further, the letter stated that Defendant was in breach of Section 6.8 of the Amended Agreement, since Defendant was continuing to use "confidential information and Xerox property," including software, customer lists, and promotional literature. *Id*. at 2.  Lastly, the letter stated that Defendant was violating the Amended Agreement by refusing to either disconnect its business telephone lines or add a message providing callers with the new telephone number to reach the new local Xerox representative. *Id*. at 3.

On October 24, 2008, Plaintiff commenced this action, alleging claims for breach of contract, conversion, unfair competition, trademark infringement, and trademark dilution.

On December 15, 2008, Defendant filed the subject motion to . . . transfer venue.  Defendant maintains that . . . this District is an inconvenient forum, and venue should be transferred to the District of Arizona for the conveniences of the parties.

Decision and Order [#22].  In analyzing the motion to transfer venue in its prior Decision and Order, the Court stated, in pertinent part:

Defendant argues that the District of Arizona is a more-convenient forum, for the following reasons: 1) both Plaintiff and Defendant maintain business operations in Arizona; 2) most of Defendant's witnesses are located in Arizona, and some of Plaintiff's anticipated witnesses are located in California; 3) litigating in New York will impose a financial hardship on Defendant, while litigating in Arizona would impose no such hardship on Plaintiff; 4) the locus of operative facts is Arizona; and 5) Plaintiff's choice of venue should be given little weight, since this lawsuit has little connection to New York.  Plaintiff, on the other hand, maintains that Defendant has failed to make a strong showing in favor of transferring venue.  In that regard, Plaintiff states that: 1) Plaintiff's choice of forum is entitled to deference; 2) many of Plaintiff's witnesses are located in Rochester; 3) the majority of Plaintiff's relevant documents are located in Rochester; 4) this Court is best able to apply New York law; and 5) although Plaintiff has significant resources, such resources would "quickly be drained if Xerox were constantly [being] required to litigate in remote, inconvenient locations." (Pl. Memo of Law at 19).

Applying the foregoing factors, the Court finds, first, that Plaintiff's choice of forum is entitled to deference, since Plaintiff resides in this district.

Therefore, that factor weighs in Plaintiff's favor.  Second, it appears that the convenience of parties is a neutral factor, since one party's witnesses will be inconvenienced regardless of which forum is chosen.  Third, it appears likely that the situs of operative facts favors the Arizona forum, since that is where the alleged breaches and intellectual property violations occurred.  Therefore, that factor favors Defendant.  The next several factors, namely, the interests of justice and judicial economy, the relative ease of access to sources of proof, and the availability of process to compel unwilling witnesses, favor Defendant.  In that regard, the Court finds that it would impose a greater hardship on Defendant's witnesses to travel to New York that it would for Plaintiff's witnesses, most of whom are corporate employees, to travel to Arizona.[5]  As for the relative means of the parties, this factor favors Defendant, since Plaintiff clearly has superior financial resources.  Lastly, this Court is presumably more familiar with New York State law, which slightly favors Plaintiff's choice of forum.

In short, the most significant factor favoring transfer is the disparity between the relative means of the parties, although some courts have held that this factor is less important where, as here, both parties are corporations. *See, Ripmax Ltd. v. Horizon Hobby, Inc.*, No. 3:07-CV-386 (JCH), 2007 WL 2049033 at *5 (D.Conn. Jun. 25, 2007) ("[T]he relative means of the parties is entitled to little weight where both parties are corporations.") (citation omitted); *but see, USA Interactive v. Savannah Air Ctr., LLC*, No. 02 Civ. 3659(LLS), 2002 WL 1808236 at *2 (S.D.N.Y. Aug. 7, 2002) ("Although the relative means of the parties is a more significant factor when one party is an individual, the fact that there is a disparity between the relative means of the two corporations supports a transfer.") (citation and internal quotation marks omitted).

Having considered all of the applicable factors and the facts and

---

[5] Plaintiff appears to take particular umbrage at the Court's use of the words "corporate employees," since Plaintiff refers to that designation five times in its motion for reconsideration.  On that point, Plaintiff indicated that its witnesses will consist of "six employees, all located in Rochester." Pl. Memo of Law [#23-3].  Defendant, on the other hand, indicated that two of its five key witnesses will be non-employees who live in Arizona. Roland Affidavit [#4-3] at ¶¶ 8-12.  The Court believes that it will be easier for Plaintiff to have its employees attend proceedings in Arizona than it will be for Defendant to have non-employees attend proceedings in New York.  Moreover, the fact that a plaintiffs' witnesses are its own employees is a factor that other courts have considered in deciding whether to transfer venue. *See, e.g., Arrow Electronics v. Ducommun*, Inc., 724 F.Supp. at 267 ("The Court has carefully reviewed the witness lists presented by the parties and finds that the balance of convenience weighs in favor of transfer. The officers of the two largest of the subsidiaries are located in California, as are many of defendant's former officers who were involved in the transaction at issue. Plaintiff's list of witnesses who will be inconvenienced by transfer are plaintiff's own officials, employees of the smallest of the three subsidiaries involved in the transfer, plaintiff's accountants involved in the transaction (who still are employed by plaintiff), and a few other individuals involved in the sale of the smallest subsidiary. The Court finds the balance here to be clearly in defendant's favor.").

circumstances of this case, the Court finds that the case should be transferred to Arizona. In that regard, there is a vast disparity in the financial resources of the parties, which favors transferring the case. Moreover, litigating in New York would likely be highly disruptive to Defendant's business, which consists of seven employees, two of whom account for almost all of Defendant's sales. On the other hand, litigating this action in Arizona is unlikely to have any significant impact on Plaintiff's overall operations.[6] Accordingly, Defendant's application to transfer venue is granted.

Decision and Order [#22].

Immediately after the Court issued its Decision and Order, Plaintiff filed the subject motion for reconsideration [#23]. In support of that application, Plaintiff maintains that: 1) the Court erred by giving "any significant weight"[7] to the "relative means" factor, since both parties are corporations; 2) the Court erred by granting the motion to transfer venue since there was not sufficient evidence that Defendant would be unduly burdened by litigating in this district; and 3) the Court erred by finding that it would be a greater hardship for ADP's witnesses to travel to this District than it would be for Plaintiff's "corporate employees" to travel to Arizona.

## DISCUSSION

As noted above, Plaintiff essentially maintains that the Court abused its discretion in transferring this action to Arizona. However, based upon the factors set forth above, the Court disagrees. Plaintiff's motion for reconsideration is denied, since Plaintiff has not shown that reconsideration is necessary to correct a clear error or to prevent manifest injustice.

---

[6] At oral argument, Defendant further argued that Plaintiff would not be unduly inconvenienced by litigating in Arizona, since it had already initiated various collections actions against Defendant in Arizona.

[7] Plaintiff's Memo of Law at 1.

CONCLUSION

Plaintiff's motion for reconsideration [#23] is denied. The Clerk of the Court is directed to transfer this action to the United States District Court for the District of Arizona, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

Dated:　　　April 13, 2011
　　　　　　　Rochester, New York

　　　　　　　　　　　　　　　　　　　　　ENTER:


　　　　　　　　　　　　　　　　　　　　　/s/ Charles J. Siragusa
　　　　　　　　　　　　　　　　　　　　　CHARLES J. SIRAGUSA
　　　　　　　　　　　　　　　　　　　　　United States District Judge